**2022-1832**

# United States Court of Appeals
# for the Federal Circuit

---

**UNITED STATES,**

Plaintiff-Appellant,

*v.*

**KATANA RACING, INC., dba Wheel & Tire Distributors**

Defendant-Appellee.

---

Appeal from the United States Court of International Trade,
No. 19-cv-00125, Senior Judge Thomas J. Aquilino, Jr.

---

## RESPONSE BRIEF OF DEFENDANT-APPELLEE, KATANA RACING, INC.

---

John M. Peterson
*Counsel of Record*
Patrick B. Klein
NEVILLE PETERSON LLP
55 Broadway Suite 2602
New York, NY 10006
(212) 635-2730
jpeterson@npwny.com

Richard F. O'Neill
NEVILLE PETERSON LLP
701 Fifth Avenue, Suite 4200-2159
Seattle, WA 98104
(206) 905-3648
roneill@npwny.com

October 24, 2022

**FORM 9. Certificate of Interest**                           Form 9 (p. 1)
                                                                July 2020

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF INTEREST

| | |
|---|---|
| **Case Number** | 2022-1832 |
| **Short Case Caption** | US v Katana Racing, Inc. |
| **Filing Party/Entity** | Katana Racing, Inc. dba Wheel & Tire Distributors |

> **Instructions:** Complete each section of the form.  In answering items 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.  **Please enter only one item per box; attach additional pages as needed and check the relevant box**.  Counsel must immediately file an amended Certificate of Interest if information changes.  Fed. Cir. R. 47.4(b).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: 06/10/2022                    Signature:  /s/ John M. Peterson

                                    Name:       John M. Peterson

| 1. Represented Entities. Fed. Cir. R. 47.4(a)(1). | 2. Real Party in Interest. Fed. Cir. R. 47.4(a)(2). | 3. Parent Corporations and Stockholders. Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities.  ☑ None/Not Applicable | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities.  ☑ None/Not Applicable |
| Katana Racing, Inc, dba Wheel & Tire Distributors | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐     Additional pages attached

**4. Legal Representatives.**  List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities.  Do not include those who have already entered an appearance in this court.  Fed. Cir. R. 47.4(a)(4).

☑    None/Not Applicable              ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**5. Related Cases.**  Provide the case titles and numbers of any case known to be pending in this court or any other court or agency that will directly affect or be directly affected by this court's decision in the pending appeal.  Do not include the originating case number(s) for this case.  Fed. Cir. R. 47.4(a)(5).  See also Fed. Cir. R. 47.5(b).

☑    None/Not Applicable              ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

**6. Organizational Victims and Bankruptcy Cases**.  Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees).  Fed. Cir. R. 47.4(a)(6).

☑    None/Not Applicable              ☐    Additional pages attached

|  |  |  |
|---|---|---|
|  |  |  |
|  |  |  |

# **TABLE OF CONTENTS**

PAGE

CERTIFICATE OF INTEREST ............................................................... ii

TABLE OF CONTENTS........................................................................ iii

TABLE OF AUTHORITIES ...................................................................iv

STATEMENT OF RELATED CASES ....................................................vi

STATEMENT OF THE ISSUES..............................................................1

STATEMENT OF THE CASE..................................................................2

      A.    Katana's Prior Disclosure and CBP Audit ..............................4

      B.    Conference with CBP Assistant Port Director Garcia. ..........9

      C.    CBP's Summary Demand for Payment.................................10

      D.    The CIT's Dismissal of the Government's Complaint .........14

SUMMARY OF THE ARGUMENT ......................................................15

ARGUMENT .........................................................................................16

I.     Standard of Review...........................................................................16

II.    Katana's Third Statute of Limitations Waiver was Procured by Deception and Is Thus Invalid. ......................................................................16

III.   The CIT Correctly Held that a Violation of Section 592(a) is a Prerequisite to the Assessment of Penalties and/or Withheld Duties Under the Statute...30

CONCLUSION .....................................................................................43

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................ 40, 41

*Baldwin Cty. Welcome Ctr. V. Brown,* 466 U.S. 147 (1984) .................................23

*Bell Atlantic v. Twombly*, 550 U.S. 544 (2007) ............................................... 40, 41

*Bell BCI Co. v. United States,* 570 F.3d 1337 (Fed. Cir. 2009). ...........................16

*Brady v. United States*, 397 U.S. 742 (1970) .........................................................24

*Diaz Reyes v. W.D. Henry & Sons, Inc.*, 2019 WL 1723518 (W.D.N.Y. 2019) ........................................................................................................................31

*Dobbs v. Martin Marietta Materials* Inc, 2022 U.S. App. LEXIS 25750 (11th Cir. 2022) ..............................................................................................29

*Feldman v. Commissioner*, 20 Fed. 3d 1128 (11th Cir. 1994) ...............................23

*Ferring B.V. v. Allergan Inc.*, 980 F.3d 841 (Fed. Cir. 2020) ...............................21

*Green v. United States*, 260 F.3d 78 (2d Cir. 2001). ...............................................23

*Guess? Inc. v. United States*, 944 F.2d 855 (Fed. Cir. 1991). ...............................16

*Hellstrom v. U.S. Department of Veterans Affairs*, 201 F.3d 94 (2d Cir. 2000) ................................................................................................................31

*Jazz Photo Corp. v. United States*, 439 F.3d 1344 (Fed. Cir. 2006) ......................20

*Kelly v. Tan*, 2013 WL 4811913 (W.D.N.Y. 2013) ...............................................31

*Kronish v. Commissioner*, 90 T.C. 684 (1988) ......................................................23

*Kuehne & Nagel v. United States*, 17 Cl. Ct. 11 (1989). .........................................15

*KVOS Inc. v. Associated Press*, 299 U.S. 269 (1936) .............................................30

*Lynteq Inc. v. United States*, 976 F.2d 693 (Fed. Cir. 1992) .................................16

*McMann v. Richardson*, 397 U.S. 759 (1970) ........................................................24

*National Semiconductor Co. v. United States*, 796 F.3d 1354 (Fed. Cir. 2007) ......................................................................................................... 15, 43

*National Semiconductor Inc. v. United States*, 547 F.3d 1364 (Fed. Cir. 2008) ......................................................................................................... 20, 28

*Piarulle v. Commissioner*, 80 T.C. 1035 (1983) ....................................................23

*Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998) ......................32

*Trayco Inc. v. United States*, 994 F.2d 832 (Fed. Cir. 1993) .................................15

*United States v. Arky*, 938 F.2d 579 (5th Cir. 1991). ..............................................24

*United States v. Blum*, 858 F.2d 1566 (Fed. Cir. 1988) ..................................... 27, 33

*United States v. Catapano*, 2008 U.S. Dist. LEXIS 121693 (E.D.N.Y. 2008) ......25

*United States v. Complex Machine Works, Inc.*, 83 F. Supp. 2d 1037 (Ct. Int'l Tr. 1999). .................................................................................................40

*United States v. Ford Motor Co.*, 497 F. 3d 1331 (Fed. Cir. 2007) ......................23

*United States v. Guerra*, 94 F.3d 989 (5th Cir. 1996) ...........................................24

*United States v. Heidecke*, 900 F.2d 1155 (7th Cir. 1990) ............................... 15, 25

iv

*United States v. Ho*, 582 F. Supp. 3d 1325 (Ct Int'l Tr. 2022)................................35
*United States v. Inn Foods Inc.* 560 F.3d 1338 (Fed. Cir. 2009)............................35
*United States v. Koh*, 968 F.Supp. 136 (S.D.N.Y. 1997). ......................................24
*United States v. Levine*, 658 F.2d 113 (3d Cir. 1981) .............................................24
*United States v. Matthews*, 31 C.I.T. 2075 (2007) .................................................35
*United States v. Nitek Elecs., Inc.*, 806 F.3d 1376 (Fed. Cir. 2015)........... 29, 39, 43
*United States v. Palmer*, 1996 U.S. App LEXIS 23187 (4th Cir. 1996) .................20
*United States v. Trek Leather Inc.*, 767 F.3d 1288 (Fed. Cir. 2014) ......................35
*United States v. Wilson*, 26 F.3d 142 (D.C. Cir. 1994) ..........................................24
*Walden v. Sanitation Salvage Corp.*, 2015 WL 1433353 (S.D.N.Y. 2015)............31

**Statutes**

19 U.S.C. § 1501 .......................................................................................................27
19 U.S.C. § 1508 .........................................................................................................4
19 U.S.C. § 1509 .........................................................................................................4
19 U.S.C. § 1514 ......................................................................................... 27, 38, 42
19 U.S.C. § 1592 ................................................................................................ passim
19 U.S.C. § 1618 ............................................................................................ 15, 27, 28
19 U.S.C. § 1621 ...................................................................................................7, 25

**Other Authorities**

International Chamber of Commerce, *Incoterms 2010: ICC Rules for the
    Use of Domestic and International Trade Items* (2010) .....................................3, 4
*Modernization of the Customs Broker Regulations*, 87 Fed. Reg. 63267 (Oct.
    18, 2022)..............................................................................................................34
USCIT Admin. Order 02-1, *Electronic Filing Procedures and Submission of
    Confidential Information* ....................................................................................32
USCIT Admin. Order 08-1, *EGovernment Act of 2002 and Privacy
    Redaction* ...........................................................................................................32

**Regulations**

19 C.F.R. § 111.36 ....................................................................................................34
19 C.F.R. § 162.74 ............................................................................................. passim
19 C.F.R. § 162.78 ....................................................................................................37
19 C.F.R. §162.77 .....................................................................................................37
19 C.F.R. §162.79 .....................................................................................................37

## <u>STATEMENT OF RELATED CASES</u>

In accordance with Rule 47.5 of the Rules of Practice of the U.S. Court of Appeals for the Federal Circuit, counsel for Defendant-Appellee Katana Racing, Inc. makes the following statement:

1.    Counsel for Defendant-Appellee know of no other civil action brought before the U.S. Court of International Trade that was previously before this or any other appellate court under the same or similar title.

2.    Counsel for Defendant-Appellee is not aware of any actions, currently pending in the U.S. Court of International Trade, which will directly affect or be affected by this Court's decision in the instant appeal.

2022-1832

# United States Court of Appeals for the Federal Circuit

---

## UNITED STATES,

Plaintiff-Appellant,

*v.*

## KATANA RACING, INC., dba Wheel & Tire Distributors

Defendant-Appellee.

---

Appeal from the United States Court of International Trade,
No. 19-cv-00125, Senior Judge Thomas J. Aquilino, Jr.

---

## RESPONSE BRIEF OF DEFENDANT-APPELLEE, KATANA RACING, INC.

Defendant-Appellee, Katana Racing, Inc., ("Katana"), in accordance with Rules 28.1 and 32 of the Federal Rules of Appellate Procedure and the Rules of Practice of the U.S. Court of Appeals for the Federal Circuit, hereby submits its response brief in this appeal.

## STATEMENT OF THE ISSUES

1.     Whether the trial court correctly held that it lacked subject matter jurisdiction to review U.S. Customs and Border Protection's ("CBP" or "Customs") 19

U.S.C. § 1592(d) claim against Katana because the statute of limitations had expired?

2.    Whether the trial court correctly determined that the Government was required to follow the administrative procedures to establish a violation of the prohibition set out in 19 U.S.C. § 1592(a), a mandatory predicate to a cause of action to recover withheld duties pursuant to 19 U.S.C. § 1592(d)?

3.    Whether the trial court's judgment was based solely on its finding of lack of subject matter jurisdiction, or whether the trial court considered and decided other pending motions?

## STATEMENT OF THE CASE

The issue in this appeal is whether the CIT correctly granted Defendant-Appellee Katana's motion to dismiss the Government's Complaint seeking payment of 19 U.S.C. § 1592(d) "withheld duties" in respect of some 386 entries of passenger vehicle and light truck tires ("PVLT") from the People's Republic of China ("PRC") made between 2009 and 2012.

Katana, a Southern California-based importer and distributor of pneumatic tires and wheels, contended, before CBP and the U.S. Court of International Trade ("CIT"), that it had not authorized the filing of any of the 386 entries that were filed in its name, and that it had been a victim of "identity theft."

Beginning September 26, 2009, the United States imposed additional "safe-guard" duties on PVLT from the PRC, pursuant to Section 421(a) of the Trade Act of 1974, 19 U.S.C. § 2451(f). *See* Proclamation No. 8414, 3 C.F.R. § 8414 (2009). Imposed in addition to the 3.4% or 4% *ad valorem* Column 1 tariffs on PVLT tires of subheadings 4011.10.10, 4011.10.50, 4011.20.10, and 4011.20.50 of the Harmonized Tariff Schedule of the United States ("HTSUS"), the additional safeguard duties were in effect for three years, at declining rates of 35%, 30%, and 25% *ad valorem*, respectively. The safeguard duties expired in September 2012.

When the PVLT safeguard duties were announced, Katana advised its Chinese suppliers that it would no longer be able to purchase Chinese tires because of the additional duty costs. In response, certain Chinese producers offered to sell Katana tires at Delivered Duty Paid ("DDP") prices.[1] Upon negotiating satisfactory prices, Katana agreed to purchase tires from these companies on a DDP basis. For the next three years, Katana received tires at its Southern California location on a DDP price basis, and rendered payment to its vendors at the negotiated DDP prices. As the buyer in a DDP transaction, Katana was not responsible for obligations relating to

---

[1] *See e.g.,* International Chamber of Commerce, *Incoterms 2010: ICC Rules for the Use of Domestic and International Trade Items* (2010), (hereinafter "Incoterms") ("The Incoterms rules explain a set of three-letter trade terms reflecting business-to-business practice in contracts for the sale of goods."), accessible at https://iccwbo.org/resources-for-business/incoterms-rules/incoterms-rules-2010/ (last accessed October 17, 2021).

customs clearance or the payment of duties to CBP.[2] Accordingly, Katana never advanced or paid any duties in respect of the imported Chinese tires, never corresponded with any customs brokers regarding the imported tires, and never received bills for customs duties, freight forwarding or customs brokerage services. The company's records, which were audited by CBP, confirmed these facts and reflected that Katana was billed on a DDP basis by its vendors, and paid those vendors on that basis.

### A.    Katana's Prior Disclosure and the CBP Audit.

In mid-2012, Katana was contacted by CBP's Regulatory Audit Division at the Port of Seattle, WA, which sought to conduct a "Quick Response Audit" of 61 customs entries of Chinese-origin PVLT tires.[3] Perplexed by the request, Katana

---

[2] According to the International Chamber of Commerce, INCOTERMS (2010):

> "Delivered Duty Paid" means that the seller delivers the goods when the goods are placed at the disposal of the buyer, cleared for import on the arriving means of transport ready for unloading at the named place of destination. The seller bears all the costs and risks involved in bringing the goods to the place of destination and has an obligation to clear the goods not only for export but also for import, to pay any duty for both export and import and to carry out all customs formalities.

Accessible at https://iccwbo.org/resources-for-business/incoterms-rules/incoterms-rules-2010/ (last accessed October 17, 2021).

[3] Quick Response Audits are single-issue audits with a narrow focus, which are designed to address a particular, limited objective within a reasonably short period of time. The authority for auditors to examine records and conduct audits is contained in 19 U.S.C. §§ 1508 and 1509.

consulted its records but found no records of any of the entries which the auditors sought to examine, even though the auditors insisted that Katana had been listed as the Importer of Record ("IOR") on the entries. Soon thereafter, Katana determined that its identity had been misappropriated on the entry transactions by persons listing Katana as the named importer of record on entry transactions without the knowledge, authorization, or consent, of Katana, its employees, and/or agents; and (ii) other information listed on the entries could not be correlated with the DDP commercial invoices Katana had received and paid.

On July 23, 2012, Katana protectively filed with CBP at the Port of Los Angeles/Long Beach a prior disclosure pursuant to 19 U.S.C. § 1592(c)(4), indicating that erroneous entries had been made in its name and without its knowledge, authorization, or consent. Appx256-Appx263. The prior disclosure stated that Katana had contracted to purchase tires from vendors on DDP terms, and that, as a result of the CBP audit, it discovered that its identity had been misappropriated and fraudulently listed as the IOR on customs entries. *Id.*

CBP conducted its "Quick Response Audit" in 2012 and 2013, to which Katana gave its full cooperation. Appx265. During the audit, Katana obtained Importer

Trade Activity ("ITRAC") data from CBP,[4] which confirmed that its identity had been misappropriated for the purpose of making hundreds of entries of PVLT tires from the PRC. These entries were filed by dozens of separate customs brokers, all complete strangers to Katana.

Beginning February 3, 2013, Katana's counsel contacted the dozens of brokers identified in the ITRAC report who filed the fraudulent entries in Katana's name and began collecting copies of the entry summaries. Appx14; Appx479. It quickly became evident that Katana had been the victim of a pervasive scheme of identity theft, as Chinese vendors or freight forwarders had engaged licensed U.S. customs brokers to file entries in Katana's name, without Katana's knowledge, permission, or authorization.

Katana cooperated fully with the CBP audit, providing CBP's auditors with copies of all commercial invoices and proofs of payment for all DDP entries in question. On April 5, 2013, CBP issued a report finding that duties, taxes, and fees had been underpaid on the 61 reviewed entries in the aggregate amount of $792,053.69. Appx265-Appx283. The Report included notes on the earnest cooperation of Katana and its General Manager, Mr. Joe Garcia, thanking them for their cooperation, and

---

[4] "ITRAC" refers to company-specific import data placed in a database and provided on CD-Rom to the requestor for a processing fee. *See e.g.*, https://www.cbp.gov/trade/itrac-requests (last accessed October 23, 2022).

recognizing that "Katana stated that it did not direct the importation of these goods." Appx272; *see also id.* ("Unbeknownst to Katana, it appears that the Chinese suppliers, working with Customs brokers in Los Angeles, made Katana the importer of record."). The CBP auditors noted that these facts, combined with Katana's genuine lack of access to relevant bills of lading or shipping contracts, had frustrated the agency's effort to make an adjustment to its calculation of revenue loss such that it could reflect nondutiable international transportation expenses which were included in the DDP prices stated in the invoices, but excludable from dutiable value.[5] Appx15.

On August 31, 2013, and September 1, 2013, Katana provided significant additional information to CBP to perfect its Prior Disclosure. Appx284-Appx411.

In response to CBP's request for a waiver of the 19 U.S.C. § 1621 statute of limitations period, on May 16, 2014, Katana executed a two-year statute of limitations ("SoL") waiver. Appx413-Appx417.

CBP thereafter expanded its audit to include some 386 entries made while the safeguard duties were in place (*i.e.*, September 26, 2009 through September 25, 2012). Katana again fully cooperated in this effort, retrieving entries from the various customs brokers that had unlawfully filed entries in its name, and comparing the

---

[5] The auditors had based their calculation of dutiable values on the DDP prices paid by Katana.

7

entry information with the DDP invoices Katana had received from its vendors. On June 22, 2015, CBP's Fines, Penalties and Forfeitures ("FP&F") Office in Long Beach, CA, issued a letter to Katana, indicating that CBP had calculated a loss of revenue ("LOR") totaling $10,451,452.75, and requesting payment of that amount to "perfect" the 2012 prior disclosure. Appx418-Appx421.[6]

Katana responded to the June 22, 2015 CBP letter on July 23, 2015, noting its inability to pay the amount demanded, and questioning that amount since CBP's calculations had not adjusted the DDP prices paid by Katana to reflect non-dutiable elements such as customs duties or international freight. Appx422-Appx426. That same day, Katana provided CBP with a further statute of limitations waiver, in a good faith effort to allow the parties additional time to rectify the demands, and to allow for an orderly administrative process. Appx427-Appx430. These discussions reduced the claimed withheld duty amount to $5,742,483.80. Appx432.

On February 12, 2016, CBP issued a revised duty demand to Katana, requesting payment of an adjusted claimed revenue loss of $5,742,483.80. Appx431-Appx432. On February 24, 2016, Katana wrote to CBP requesting a meeting. Appx433-Appx435.

---

[6] To be clear, this letter did not constitute a pre-penalty or penalty notice under 19 U.S.C. § 1592.

## B.    Conference with CBP Assistant Port Director Garcia.

On March 21, 2016, counsel, together with the President, General Manager and Controller of Katana, met in Long Beach with Assistant CBP Port Director Jorge Garcia. At the meeting, Katana made a brief presentation, reiterating its inability to pay the withheld duties demanded, and indicating that it did not believe it was liable for same. Katana asked CBP to allow it to retain its "prior disclosure" status and requested that the agency proceed with the issuance of a formal pre-penalty notice, pursuant to 19 U.S.C. § 1592(b), so that the administrative process could commence, and so that the company could provide a thorough narrative of events and demonstrate why it had not acted in any manner that violated the proscriptions of Section 592(a). Assistant Port Director Garcia agreed, and Katana left the meeting satisfied that a formal pre-penalty notice would issue, and fully anticipating receipt of a notice of Section 592(a) violation so that the company could understand the allegations made against it, review the culpability level asserted, and make its case that it is not liable because its identity was stolen and fraudulently included on the entries at issue. This understanding was confirmed in a March 22, 2016 letter sent by counsel to Assistant Port Director Garcia. Appx436-Appx438.

Thereafter, on October 25, 2016, Katana furnished CBP with a requested third waiver of the SoL, which extended the SoL period through July 15, 2019. Appx439-

9

Appx443. The language of the waiver expressly states that Katana agreed to extend

the limitations period:

> … in order that Katana might obtain the benefits of the orderly contin-
> uation and conclusion of any administrative proceedings currently be-
> ing conducted or contemplated by CBP, so that Katana could enjoy the
> benefit of orderly administrative proceedings in which CBP is review-
> ing entries of tires by Katana which might be subject to safeguard duties
> formerly imposed on entries of certain passenger car and light truck
> tires from China.

*Id.* But CBP never initiated the promised proceedings under Section 592(b).

### C.    CBP's Summary Demand for Payment.

Nothing of substance transpired until May 2018, when CBP attorney Karen

Hiyama emailed counsel revealing that she had "inherited" the Katana case file,

which had been transferred from the Port of Long Beach to her office at CBP's Cen-

ter of Excellence and Expertise ("CEE") for Automotive and Aerospace products, in

Detroit, MI. Appx444-Appx447.  It became apparent that Ms. Hiyama had not re-

ceived the entire case file and was not aware of all that had occurred before she

became involved. Hence, Katana's counsel provided Ms. Hiyama with the absent

information, which included details regarding the meeting with Assistant Port Di-

rector Garcia. *Id.*

Noting of substance then transpired until March 28, 2019, Ms. Hiyama repre-

sented to Katana's counsel that this matter had come to the "top of my docket after

quite a long hiatus." *Id.* She noted Katana's statements regarding its inability to pay

the $5.7 million, indicated that information substantiating the company's inability to pay should be submitted, and that "there is a pathway to settlement by treating any offer by Katana as an offer in compromise without the issuance of a duty demand."[7] *Id.* However, Katana was still awaiting initiation of the promised administrative procedures pursuant to 19 U.S.C. § 1592(b), which had been pledged earlier by Assistant Port Director Garcia. Ms. Hiyama had been fully apprised of Mr. Garcia's awareness and representations in this regard.

On May 31, 2019, Ms. Hiyama emailed Katana's counsel indicating that her office would be preparing a Section 592(d) duty demand. Appx448-Appx449. No mention was made of the promised 19 U.S.C. § 1592(b) formal pre-penalty notice or commencement of the administrative process.

Several weeks later, <u>on June 20, 2019—with just 25 days remaining in the waived limitations period for events which began nearly a decade before</u>—CBP issued a summary demand for payment of duties under claimed authority of 19 U.S.C. § 1592(d). This Section 592**(d)** notice contained none of the information that would have been specified in a Section 592**(b)** pre-penalty notice, and it completely omitted allegations of any violation of Section 592**(a)**. Appx450-Appx461. In response, Katana requested an in-person conference, and revoked its most recently issued waiver

---

[7] At no point did Katana offer to pay any withheld duties to CBP.

of the SoL period explaining that it had been procured by CBP through false repre-

sentations. Appx462-Appx666 (citing Katana Third SoL Waiver of October 25,

2016) Appx439-443. Despite having more than three years to act since Katana's

conference with Assistant Port Director Garcia, CBP now simply refused to initiate

the administrative processes required by Section 592(b),[8] asserting it could bypass

that process altogether and issue a Section 592(d) notice demanding immediate pay-

ment.

Ms. Hiyama emailed Katana's counsel on July 1, 2019, purportedly respond-

ing to Katana's June 26, 2019 letter.[9] Appx667-Appx669. Ms. Hiyama indicated that

---

[8] For this reason, Katana also raised the affirmative defense of laches in its Answer
to the Complaint.

[9] Ms. Hiyama's email message falsely claims that "you have been representing since
2016 that your client would work toward a payment plan to pay the loss of revenue."
Appx668. In fact, in Katana's last substantive communication with CBP, the com-
pany disclaimed liability and requested that it:

> … be given an opportunity to present defenses grounded in (1) identity
> theft and misappropriation by various Customs brokers and (2) whether
> any conduct by Katana constituted a violation of 19 U.S.C. §1592(a),
> to wit, entry or attempted entry or introduction of goods into the United
> States by means of false and material statements or practices, or by
> means of material omissions. As we discussed, findings by two teams
> of Customs auditors have supported Katana's claims that its identity
> was stolen or misappropriated, and that the subject entries were made
> without Katana's knowledge or authorization."

Appx437.

it had been her "goal" to "settle this matter without issuance of a formal duty demand," and, apparently, without providing Katana with the pre-penalty notice and procedures specified in Section 592(b). Ms. Hiyama noted that, at her request, Katana had provided evidence of its financial condition,[10] and asserted that counsel had "made it appear as though you and your client were negotiating in good faith." *Id*. In fact, no negotiation had ever been initiated, and no offers were ever made, and none are reflected on the record of this case. Ms. Hiyama also made the remarkable assertion that "[t]he recipient of a duty demand, in contrast to a prepenalty notice, has no right to an administrative process." *Id*.[11]

Katana responded on July 2, 2019, reiterating the company's claim of innocence and noting its entitlement to the Section 592(b) notice and procedures which CBP had previously agreed were owed, and specifically promised to Katana, but was now refusing to give. Appx670-Appx676.

---

[10] Katana presumed that the financial information was requested to confirm its March 22, 2016 representation to Mr. Garcia, in anticipation that proceedings would be initiated under Section 592. Appx437.

[11] This assertion calls into question why CBP had thrice requested from Katana waivers of the statute of limitations, each time predicated on the notion that it would allow for an orderly administrative process. Appx413-Appx417; Appx428-Appx430; Appx439-Appx443.

13

CBP emailed Katana's counsel on July 8, 2019, attaching a response to Katana's Letter of July 2, 2019. Appx677-Appx681. The letter summarily denied Katana's request for a conference and reiterated the agency's demand for payment of "withheld duties" on entries long ago liquidated and final. *Id.*[12]

CBP thereafter filed its Complaint in this case on July 15, 2019 Appx89-Appx107, seeking to collect "withheld duties" under Section 592(d), but again failing to include any allegation of an underlying violation of Section 592(a), nor of any CBP finding of such a violation.

### D.    The CIT's Dismissal of the Government's Complaint.

In its decision and order dismissing this case for lack of subject matter jurisdiction, the CIT held that Katana's revocation of the SoL waiver was effective, stating that "the defendant has provided reasonable justification for its revocation of its last SoL, with the result that this action is now barred by the passage of time." Appx45. The Trade Court noted plaintiff's claim that the third SoL waiver had been obtained "under false pretenses." Appx24. In addition, the CIT noted "CBP's apparent recalcitrance in specifying to the defendant the actual § 1592(a) violation [Katana] committed." *Id.*

---

[12] This correspondence puts paid the assertion in paragraph 24 of the Complaint that "after it submitted its tax returns on May 21, 2019, Katana stopped communicating with CBP." Appx93 at ¶ 24.

## SUMMARY OF THE ARGUMENT

The CIT's determination that it lacked jurisdiction in this case under U.S. Court of International Trade Rule ("USCIT R.") 12(B)(1) is correct because Katana validly revoked its third SoL waiver. Statute of limitations waivers are not valid when induced by the government's representation. *See e.g.*, *United States v. Heidecke*, 900 F.2d 1155, 1161 (7th Cir. 1990). Given that Katana had made a prior disclosure, which in all cases should trigger an investigation and a claim for penalties equal to at least the interest accrued on underpaid duties, *see National Semiconductor Co. v. United States*, 796 F.3d 1354 , 1356 (Fed. Cir. 2007), it was eminently reasonable for Katana to believe Assistant CBP Port Director Garcia's representation that its disclosure would be handled pursuant to the procedures set out in 19 U.S.C. § 1592(b) (providing *inter alia* the opportunity to demonstrate that it did not violate 19 U.S.C. § 1592(a)), and 19 U.S.C. § 1618 (which allows a party assessed with a penalty to petition administratively for its mitigation).[13]

The Trade Court's dismissal of the action was grounded in its determination that the CIT lacked jurisdiction by reason of plaintiff's untimeliness under USCIT

---

[13] Mitigation under 19 U.S.C. § 1618 is not a requirement, but an administrative act of grace. *Kuehne & Nagel v. United States,* 17 Cl. Ct. 11, 18 (1989). Of great significance here is the fact that Assistant Port Director Garcia's promised to Katana that it would have an opportunity to request such grace. To be clear, however, mitigation does not prevent a party receiving it from challenging the legality of the underlying penalty. *Trayco Inc. v. United States*, 994 F.2d 832, 838-39 (Fed. Cir. 1993).

R. 12(b)(1). The CIT did not decide the merits of either Katana's USCIT R. 12(b)(6) motion to dismiss for failure to state a claim on which relief may be granted, or the Government's Motion for Summary Judgment (which defendant had not yet been given an opportunity to respond to at the time of issuance of the lower court decision). Even so, the Court's discussion in *dicta* of matters raised by the USCIT R. 12(b)(6) motion offers meaningful perspective for review of CBP's wanton disregard for statutory procedure, which included the agency's inducement of Katana's third SoL waiver by false pretenses.

## ARGUMENT

### I.     Standard of Review.

This Court reviews legal holdings *de novo* and examines factual findings for clear error. *Bell BCI Co. v. United States,* 570 F.3d 1337, 1340 (Fed. Cir. 2009). The Court also reviews the lower court's interpretation of statutory provisions *de novo. Lynteq Inc. v. United States*, 976 F.2d 693, 696 (Fed. Cir. 1992); *Guess? Inc. v. United States*, 944 F.2d 855, 857 (Fed. Cir. 1991).

### II.    Katana's Third Statute of Limitations Waiver was Procured by Deception and Is Thus Invalid.

As the CIT noted, when CBP declined Katana's request for a conference regarding the agency's duty demand, Katana realized that the third SoL waiver, dated October 25, 2016, "had been procured by 'false pretenses.'" Appx24. The record provides two reasons why this is so.

16

First, CBP solicited the third waiver so that Katana could "obtain the benefits of the orderly continuation and conclusion of any administrative proceedings currently being conducted or contemplated by CBP, in which CBP is reviewing entries of tires by Katana which might be subject to safeguard duties formerly imposed on entries of passenger vehicle and light truck tires from China," Appx441.[14]

Second, CBP made the specific representation to Katana in the course of administrative proceedings already underway. On July 3, 2012, Katana submitted a prior disclosure to CBP in accordance with 19 U.S.C. § 1592(c)(4) and 19 C.F.R. § 162.74. Appx257-Appx263. Following that submission, CBP apparently initiated a formal prior disclosure proceeding, No. 2012-2704-PRD-177, and conducted a regulatory audit into the disclosed facts, with Katana's full cooperation. Appx15 . However, (as noted by the Trade Court, Appx39-Appx40), it does not appear that the agency ever referred the disclosure to CBP's Office of Investigations, as required by 19 C.F.R. § 162.74.[15]  This failure alone arguably renders the entirety of CBP's

---

[14] This language is formulated by CBP and included in SoL waivers the agency solicits. Appx413-Appx417, Appx428-Appx430, Appx439-Appx443.

[15] Thus, 19 C.F.R. § 162.74(f) provides (emphasis added):

> (f) Verification of disclosure. **Upon receipt of a prior disclosure, the Customs officer shall notify Customs Office of Investigations of the disclosure.** In the event the claimed prior disclosure is made to a Customs officer other than the concerned Fines, Penalties, and Forfeitures Officer, it is incumbent upon the Customs officer to provide a copy of

administrative proceedings invalid for failure to exhaust required administrative procedures, yet another basis undermining the validity of its final withheld duty demand on plaintiff.[16] On February 12, 2016, CBP, acting pursuant to 19 C.F.R. § 162.74(c),[17] wrote to Katana, requesting the deposit of withheld duties in the

---

> the disclosure to the concerned Fines, Penalties, and Forfeitures Officer. The disclosing party may request, in the oral or written prior disclosure, that the concerned Fines, Penalties, and Forfeitures Officer request that the Office of Investigations withhold the initiation of disclosure verification proceedings until after the party has provided the information or data within the time limits specified in paragraph (b)(4) of this section. It is within the discretion of the concerned Fines, Penalties and Forfeitures Officer to grant or deny such requests.

[16] As noted by the Trade Court, Appx26-Appx27, neither CBP's final duty demand nor (astonishingly) its Complaint in this action stated *who* violated 19 U.S.C. § 1592(a), nor did CBP even allege that Defendant Katana itself committed the § 1592(a) act or omission giving rise to the demand. Making this determination presumably would have been the responsibility of CBP's Office of Investigations. If the violations had occurred by reason of fraud, the investigators would have had five (5) years from the date of discovery of the fraud (*i.e.,* late 2012) to investigate and bring charges against those responsible. In this case, however, CBP apparently elected to forge ahead with its unlawful duty demand without conducting the required investigation.

[17] 19 C.F.R. § 162.74(c) provides in pertinent part (emphasis added):

> (c) Tender of actual loss of duties, taxes and fees or actual loss of revenue. A person who discloses the circumstances of the violation shall tender any actual loss of duties, taxes and fees or actual loss of revenue. The disclosing party may choose to make the tender either at the time of the claimed prior disclosure, or within 30 days after CBP notifies the person in writing of CBP calculation of the actual loss of duties, taxes and fees or actual loss of revenue. **The Fines, Penalties, and Forfeitures Officer may extend the 30-day period if there is good cause to do so.**

18

amount of $5.742,483.80. Appx432. Katana then sought and was granted an in-person March 21, 2016 meeting with Assistant CBP Port Director Garcia in Long Beach, California, to explain that (i) Katana was unaware of the filing of the entries in question; (ii) Katana's identity had been stolen; and (iii) Katana did not have the funds to pay the requested duty demand, and to request that it be allowed to retain its "prior disclosure" status. Katana also requested that CBP issue to Katana a 19 U.S.C. § 1592(b) pre-penalty notice and to provide the company with an opportunity to petition in response, so the company could explain the circumstances of the identity theft and disclaim responsibility for duties owed on the entries fraudulently filed in its name. As the Trade Court explained:

> Mr. Garcia indicated apparent agreement to defendant's view of the overall process, which the defendant documented and left the meeting anticipating receipt of a notice of the specifics of the alleged § 1592(a) violation so that the company could make its case.

Appx19. CBP has never questioned Katana's description of these events.[18] There is also no question that Assistant Port Director Garcia had the power to extend the

---

[18] Assistant CBP Port Director Garcia's representations to Katana are well-documented in the record. After noting the uniqueness of the circumstances of the case, Katana's counsel confirmed in writing, Appx171:

> You indicated that Customs will issue a Section 592(d) demand for the $5.7 million in controversy and Katana will have a right to make presentations in response to that demand and in accordance with 19 U.S.C. § 1618. We appreciate the consideration and will prepare a submission to the Fines, Penalties and Forfeitures office after the Section

period for depositing duties resulting from a "prior disclosure" while continuing administrative proceedings. *See* 19 C.F.R. § 162.74(c).[19]

These representations form the basis on which Katana reasonably relied when, on October 25, 2016—just 7 months after meeting with Assistant Port Director Garcia—the company executed, at CBP's request, a third SoL waiver.

Subsequent events revealed Katana's third SoL waiver was induced by CBP through false pretenses.[20] Although Katana's third SoL waiver gave CBP nearly

---

592(d) demand is issued. We will provide you with a copy of that submission.

[19] It was reasonable for Katana to believe that it would receive administrative process under 19 U.S.C. § 1592(b). Where a "prior disclosure" is made under 19 U.S.C. § 1592(c)(4), the disclosing party is not excused from penalty liability—it is subject to a maximum penalty equal to interest on the withheld duties in cases of negligence or gross negligence, or to an amount equal to the loss of revenue in cases involving intentional violations. *Id*. Section 592(b) proceedings are required to establish (i) the fact of the violation; and (ii) the level of culpability involved (which dictates the maximum penalty amount). This Court has already indicated that the award of the interest penalty amount in prior disclosure cases requires the trial court to evaluate liability *and* culpability, and that CBP will ordinarily be justified in assessing the full interest penalty in prior disclosure cases involving negligent and grossly negligent violations in order to make the government whole. *See e.g., National Semiconductor Inc. v. United States*, 547 F.3d 1364 (Fed. Cir. 2008).

[20] Acts of deception may not be immediately apparent as such. *See e.g. United States v. Palmer*, 1996 U.S. App LEXIS 23187 (4th Cir. 1996). CBP's officers actions are entitled to a presumption of regularity, *see Jazz Photo Corp. v. United States*, 439 F.3d 1344 (Fed. Cir. 2006), and Katana was certainly entitled to rely at first on Assistant CBP Port Director Garcia's representation that CBP would take action the agency was entitled to take pursuant to 19 C.F.R. § 162.74. The deception became apparent only when, after advised of the history of the case, Ms. Hiyama changed course, electing instead to issue a final duty demand without ever initiating administrative proceedings under Section 592(b) as previously promised.

three years from its execution to conduct administrative proceedings, CBP never

provided Katana with the promised notice and opportunity to make a presentation to

CBP's FP&F office. Then, after being contacted in mid-2018 by Ms. Karen Hiyama

of CBP's Assistant Chief Counsel's office in Detroit, MI. Katana made sure Ms.

Hiyama had the complete case file including, as the CIT noted, "information regard-

ing defendant's meeting with Assistant Port Director Garcia." Appx20.[21] After Kat-

ana provided Ms. Hiyama with financial information documenting its inability to

pay the $5.7 million, she advised Katana on May 31, 2019, that Katana would not

have the opportunity to present its case to the agency and that CBP would be prepar-

ing a 19 U.S.C. § 1592(d) withheld duty demand. Appx449.[22]   On June 20, 2019,

---

Before this Court, Customs seeks to invoke the doctrine of equitable estoppel (even though it failed to introduce any evidence necessary to make the case for same in the trial court). However, equitable relief is not appropriately granted where, as here, the one seeking it—CBP—has "unclean hands." *See Ferring B.V. v. Allergan Inc.*, 980 F.3d 841 (Fed. Cir. 2020).

[21] Indeed, Ms. Hiyama's email message to Katana's counsel dated March 28, 2019 requests financial information of a kind offered "in your March 22, 2016 letter to Mr. Jorge Garcia." Appx445.

[22]   The Trade Court also noted Ms. Hiyama's May 31, 2019 statement that "I'm unfamiliar with the reason or reasons why the government would not also seek a penalty given the 1592(a) violation that underlies the duty demand." Appx22, Appx445.  Of course, to seek the interest penalty, CBP would need to conduct proceedings under 19 U.S.C. § 1592(b), provide Katana with an opportunity to partici-pate, and make formal determinations regarding (i) whether a violation of Section 592(a) had occurred; (ii) the loss of revenue resulting from such violation; (iii) the culpability of the violations; and (iv) the penalty amount to be assessed. Ultimately, however, CBP elected to proceed in a manner which bypassed required administra-tive proceedings, notices, and determinations.

CBP issued what the CIT termed "a summary demand for payment of duties pursuant to 19 § 1592(d)," Appx22, which contained "none of the information normally specified in a 'Section 592(b) notice and completely omitted any allegations of any violation of Section 592(a)' attributable to defendant." Appx22-Appx23.

On June 26, 2019, Katana responded by requesting the promised conference and right to petition the agency. However, CBP indicated that its action was final. As CBP's request for the third SoL waiver had been procured by misrepresentation, Katana expressly disclaimed that waiver, terming its action a "revocation" of the third SoL waiver. Appx203.[23] More accurately, however, the waiver is void, as the trial court found it was "clear to [Katana] that the waiver had been procured by 'false pretenses'." Appx24.

CBP brought the instant action for collection of withheld duties without providing Katana any administrative process, and asserting that none was owed. Katana moved to dismiss the action under USCIT R. 12(b)(1) (failure to file timely) and 12(b)(6) (failure to state a claim on which relief can be granted).

---

[23] As the record reflects, Katana made every effort to remind CBP of its representations– within the agency's power to make – and to request that they be fulfilled. However, CBP declined to honor those promises, revealing them to have constituted a false inducement on which Katana relied in executing its third statute of limitations waiver.

The CIT correctly held that it "cannot conclude that defendant's prior revocation of its last SoL waiver was without legal effect," Appx45, granted Katana's USCIT R. 12(b)(1) motion, and dismissed the action as untimely filed.[24] The affirmative SoL defense is subject to waiver, tolling and estoppel. *Baldwin Cty. Welcome Ctr. V. Brown,* 466 U.S. 147, 151 (1984); *Green v. United States*, 260 F.3d 78 (2d Cir. 2001). This Court has rightly observed that a SoL waiver is not a matter of contract, but a voluntary unilateral act.[25] In *United States v. Ford Motor Co.*, 497 F. 3d 1331, 1336 (Fed. Cir. 2007), this Court explained:

> Ford's argument is based on the assumption that its waiver letter was an offer that had to be "accepted" by the government. The Supreme Court, however, has clearly stated, "**a waiver is not a contract**." *Stange v. United States*, 282 U.S. 270, 276, 51 S. Ct. 145, 75 L. Ed. 335, 71 Ct. Cl. 778, 1931-1 C.B. 414 (1931) (citing to *Florsheim Bros. Drygoods Co. v. United States*, 280 U.S. 453, 466, 50 S. Ct. 215, 74 L. Ed. 542, 1930-1 C.B. 260 (1930)). Rather, **a waiver is "a voluntary, unilateral waiver of a defense**." *Id.* (concluding that the insertion of an agency's signature was not intended to convert a waiver into a contract, but instead, to serve a purely administrative function).

---

[24] While the Trade Court addressed certain issues relevant to Katana's Rule 12(b)(6) motion, it did not rule on that motion, noting, correctly that "if subject matter jurisdiction is lacking, then there can be no adjudication on the merits … " Appx9. CBP's brief before this Court raises certain claims relevant only to the USCIT R. 12(b)(6) motion. Govt.'s Br. at 33-35. While we respond to these arguments, Katana submits that they are not properly raised in the instant appeal.

[25] However, various courts have recognized that "contract principles are useful in "assessing mutual assent." *Feldman v. Commissioner*, 20 Fed. 3d 1128, 1132 (11th Cir. 1994); *Kronish v. Commissioner*, 90 T.C. 684, 692 (1988); *Piarulle v. Commissioner*, 80 T.C. 1035, 1042 (1983).

(Emphasis added).

It is also well-established that a waiver of a right or defense is void if procured by fraud, deceit or misrepresentation. This, of course, includes a SoL defense, which is not jurisdictional and may be subject to waiver by a defendant. *United States v. Arky*, 938 F.2d 579, 581 (5th Cir. 1991). To be valid, a waiver must be <u>knowing</u>, <u>voluntary</u>, and <u>intelligent</u>. *United States v. Wilson*, 26 F.3d 142, 155-56, (D.C. Cir. 1994); *United States v. Meeker,* 701 F.2d 685, 688 (7th Cir. 1983) ("The purposes of a time bar are not offended by a knowing and voluntary waiver of the defense by the defendant."); *United States v. Levine*, 658 F.2d 113, 124 n.17 (3d Cir. 1981) (explaining that knowing and intelligent waivers are valid but "should be made with the advice of counsel and informed by an understanding of the consequences of waiver"). A <u>waiver must be "done with sufficient awareness of the relevant circumstances and likely consequences</u>." *United States v. Guerra*, 94 F.3d 989, 995 (5th Cir. 1996) (emphasis added) (quoting *McMann v. Richardson*, 397 U.S. 759, 766 (1970) (guilty plea context)); *see also e.g., Brady v. United States*, 397 U.S. 742, 750 (1970). A defendant has the burden to come forward with affirmative evidence that his waiver was unknowing. *United States v. Koh*, 968 F.Supp. 136, 138 (S.D.N.Y. 1997).

Notably, a waiver of the SoL defense is invalid when induced by the government's misrepresentations. *See United States v. Heidecke*, 900 F.2d 1155, 1161 (7th

Cir. 1990) (finding that no such misrepresentation occurred); *United States v. Cata-pano*, 2008 U.S. Dist. LEXIS 121693 at *24 (E.D.N.Y.  2008) (waiver was invalid when government failed to disclose that defendant had already been charged in indictment filed under seal).

In this case, Katana issued three waivers of the 19 U.S.C. § 1621 SoL, on each occasion for the express purpose of benefiting from the promised orderly conduct and continuation of administrative proceedings. Following submission of Katana's 19 U.S.C. § 1592(a)(4) prior disclosure in 2012, the company issued its first statute of limitations waiver. At that time, CBP had apparently initiated an administrative proceeding related to the prior disclosure Katana filed, *see* number 2012-2704-PD-177, but CBP never initiated the required (and promised) investigation. And even after the first waiver was given, CBP continued regulatory audit activities in which Katana's full cooperation was acknowledged by both CBP and the CIT.[26] Af-

---

[26] It should be noted that a Regulatory Audit is not an "investigation." CBP's auditors are empowered merely to quantify the claimed loss of revenue resulting from entry irregularities. They do not make determinations regarding duty liability. And even though Katana's initial prior disclosure of July 3, 2012 raised the company's claims of identity theft, the record contains no evidence that the agency ever provided the disclosure to CBP's Office of Investigations as required by 19 C.F.R. § 162.74(f). Had such a referral been made, CBP might have interviewed involved freight forwarders, customs brokers, and others to investigate Katana's claims of identity theft. This could have led to the identification of the persons who actually provided the

ter the second waiver was issued, in 2015, CBP continued administrative proceedings, issuing a 19 C.F.R. § 162.74(c) request for the deposit of withheld duties, rectifying the calculation of the claimed revenue loss after consultation with Katana's counsel, and meeting with Katana's officers and counsel on March 21, 2016 in Long Beach, CA. It is uncontested that, at that meeting, CBP pledged that it would conduct administrative proceedings under 19 U.S.C. § 1592(b), granting an extension of the

---

false invoices and other documents fraudulently filed with CBP in Katana's name. CBP appears to have willfully blinded itself to this information.

19 C.F.R. § 162.74(c) period, and promising Katana notice and an opportunity for § 1592(b) and § 1618 procedures[27] before rendering a final determination.[28]

It was against this background that, a few months later, CBP solicited, and Katana provided on October 25, 2016, the third statute of limitations waiver. Subsequent uncontradicted events establish that the third SoL waiver was procured by misrepresentation. Indeed, despite the promise of Assistant Port Director Garcia, it

---

[27] Even if 19 U.S.C. § 1592(b) and 19 U.S.C. § 1618 procedures are not administrative remedies whose exhaustion is required before a suit may be brought to recover withheld duties pursuant to 19 U.S.C. § 1592(d), *see United States v. Blum*, 858 F.2d 1566 (Fed. Cir. 1988), these procedures are customarily followed in all cases. One would expect CBP to conduct pre-penalty proceedings under 19 U.S.C. § 1592(b) to determine the existence of a violation of 19 U.S.C. § 1592(a)—a necessary statutory prerequisite for ignoring the finality of liquidation of entries, 19 U.S.C. § 1514(a), and seeking to collect lawful duties under 19 U.S.C. § 1592(d).

In this regard, it should be noted that all 386 entries at issue here were *liquidated* and *final* many years ago pursuant to 19 U.S.C. § 1514(a). Where CBP is unilaterally allowed to undo a liquidation, it is required to do so through specific administrative actions and through notices to the importer. *See e.g.*, 19 U.S.C. § 1501 (reliquidation of liquidated entries). Where CBP seeks to undo the finality of liquidation in pursuit of 19 U.S.C. § 1592(d) withheld duties, the statute requires CBP to give notice administratively *before* hauling a defendant into court.

Katana has found no case where, as here, a party was sued for Section 592(d) duties without having first been afforded administrative due process before a suit for the withheld duties was commenced.

[28] As noted, it was not unreasonable for Katana to expect that the requested procedures would be granted given the fact that, even in cases of prior disclosure under 19 U.S.C. § 1592(c)(4), the law requires a determination and assertion of (i) the violation, *id.* at § 1592(a); (ii) the level of culpability, *id.* at § 1592(c)(1)-(3); and (iii) quantum of revenue loss, *id.* at § 1592(d), which in turn drives the maximum penalty amount. These determinations are customarily made in proceedings conducted in accordance with Section 592(b).

is now evident that CBP misrepresented its intentions to Katana, for the agency never provided Katana with notice of its demand, nor honored the company's promised "right to make representations in response to that demand and in accordance with 19 U.S.C. § 1618." Appx171.[29] When, after a two-year hiatus, the file was transferred to Ms. Hiyama, Katana made her aware of the 2016 representations of Assistant Port Director Garcia, and urged her to honor those promises (which had formed the basis for Katana granting a third SoL waiver). Yet, Ms. Hiyama expressly *refused* to provide Katana notice and an opportunity to make presentations, and proceeded to issue a final duty demand. At that point, the agency's deception became manifest. Katana, in turn, notified CBP that the third statute of limitations waiver cannot be valid, and could not be binding.

Though CBP had previously indicated that it saw no reason why the 19 U.S.C. § 1592 penalties should not be assessed, when it realized Katana declared invalid its third SoL waiver, CBP made an unprecedented tactical decision to bring suit for

---

[29] It was reasonable for Katana to be given the right to make a presentation under 19 U.S.C. § 1618 since (1) the prior disclosure statute has a penalty component, 19 U.S.C. §1592(c) and (2) where the penalty assessed is the interest penalty, the courts have suggested that it should be sought in the interest of making the government whole. *National Semiconductor Inc. v. United States*, 547 F.3d 1364 (Fed. Cir. 2008).

withheld duties against Katana without seeking penalties, in a cynical effort to cover up its deception in soliciting the third SoL waiver.[30]

Katana gave CBP every opportunity to honor its promises and representations, but the agency rejected Katana's entreaties. When it finally became evident that Katana had been induced to issue the third waiver through misrepresentation and deceit, Katana properly declared the waiver ineffective. Though Katana and the CIT used "revocation" terminology, the fact is that Katana's third SoL waiver was void.

While the Government asserts that Katana should be estopped from asserting the SoL waiver, it offered no evidence before the CIT to establish the elements of estoppel. As noted in *Dobbs v. Martin Marietta Materials* Inc, 2022 U.S. App. LEXIS 25750 (11th Cir. 2022):

> Under common law, the elements of equitable estoppel are: (1) the party to be estopped misrepresented material facts; (2) the party to be estopped was aware of the true facts; (3) the party to be estopped intended that the misrepresentation be acted on or had reason to believe that the party asserting estoppel would rely on it; (4) the party asserting the estoppel did not know, nor should it have known, the true facts; and (5) the party asserting the estoppel reasonably and detrimentally relied on the misrepresentation. *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1326 (11th Cir. 2008). We've held that a plaintiff is not required to prove the defendant acted in bad faith to be entitled to equitable estoppel, but he must prove the defendant's conduct was for the purpose of

---

[30] By filing its Complaint without specifying an assertion of the level of culpability, CBP has apparently decided to look to the courts to make the determination of liability—something this Court has said CBP may not do. *United States v. Nitek Elecs., Inc.*, 806 F.3d 1376 (Fed. Cir. 2015).

obtaining a delay of which it seeks to take advantage. *Kazanzas v. Walt Disney World Co.*, 704 F.2d 1527, 1532 (11th Cir. 1983).

Before the CIT, the Government introduced no evidence or statements establishing any of the above-delineated elements. While plaintiff's counsel argued that the issuance of the waiver constituted a misrepresentation of material facts, it was in fact CBP which made a misrepresentation to Katana.

### III.    The CIT Correctly Held that a Violation of Section 592(a) is a Prerequisite to the Assessment of Penalties and/or Withheld Duties Under the Statute.

The 386 consumption entries at issue here were long ago liquidated and made final, both as to Katana and CBP. Appx95-Appx103. The Government cannot undo the finality of those liquidations or seek to collect "withheld duties" unless it follows the Section 592(b) procedures, requiring *inter alia* CBP to allege and determine that Katana violated the proscription set out at Section 592(a). However, as explained herein, CBP failed to follow required statutory procedures and never made the statutory determinations required to bring the instant case.

Contrary to the Government's assertions, the CIT did not make any appealable determination concerning Katana's USCIT R. 12(b)(6) motion to dismiss the Complaint for failure to state a claim upon which relief could be granted. Indeed, the CIT specifically noted that "if subject matter jurisdiction is lacking, then there can be no adjudication on the merits." Appx9 (citing *KVOS Inc. v. Associated Press*, 299 U.S. 269, 278 (1936)). While the Court discussed facts relevant to Katana's USCIT

30

R. 12(b)(6) motion to dismiss—and opined that "[a]ll things considered, the plaintiff does not deserve judgment on this complaint[,]" Appx38—these observations are *dicta*, since the CIT made it clear that it was awarding judgment for Katana only on its USCIT R. 12(b)(1) claim, holding that "this action is now barred by the passage of time.. Appx45. The sole focus of this appeal should be on the CIT's dismissal based on untimeliness. To the extent that the CIT held that "Plaintiff's cross-motion for summary judgment must therefore be denied, with judgment of dismissal entered on behalf of the defendant," *id.*, the Court presumably meant to deny such motion as moot in light of its finding that subject matter jurisdiction was lacking.

We note, initially, that the Government's attempted Motion for Summary Judgment was <u>irregular in the extreme</u>. First, it was filed without leave of court, and before any discovery had been conducted. Appx757-Appx758.[31] The motion was

---

[31] "Only in the rarest of cases may summary judgment be granted against a [party] who has not been afforded the opportunity to conduct discovery." *Hellstrom v. U.S. Department of Veterans Affairs*, 201 F.3d 94, 97 (2d Cir. 2000). *See also Diaz Reyes v. W.D. Henry & Sons, Inc.*, 2019 WL 1723518, *5 (W.D.N.Y. 2019) ("[a] Rule 56(d)(1) request should ordinarily be granted where [a party] has conducted no discovery"); *Kelly v. Tan,* 2013 WL 4811913, *4 (W.D.N.Y. 2013) ("no discovery has yet taken place in this action … the Court could deny the motion on this basis alone"); *Walden v. Sanitation Salvage Corp*., 2015 WL 1433353, *5 (S.D.N.Y. 2015)("[c]ourts in the Second Circuit routinely deny or defer motions for summary judgment when the non-movant has not had an opportunity to conduct discovery and submits an affidavit or declaration that meets the requirements set forth in Rule 56(d)"). Nothing in the record suggests that the Trade Court intended to entertain the government's Motion for Summary Judgment on the merits, without giving Katana the opportunity to conduct discovery or to respond to the motion.

accompanied by a disorganized 9,900 page "evidence summary" which violated the

CIT's redaction rules[32] hundreds of times, carelessly placing Katana's proprietary

tax identification and other confidential information on a public record. Immediately

after the summary judgment motion and evidence summary were filed, Katana filed

an Emergency Motion for a Protective Order to require sealing of the evidence sum-

mary to avoid unauthorized disclosure of Katana's confidential data. Appx758.[33]

That motion was granted the same day, and the documents were and remain sealed.

*Id.*[34] Katana thereafter filed a motion to stay consideration of the summary judgment

motion, pending resolution of its already-interposed Motion to Dismiss.

   "Subject matter jurisdiction is a necessary prerequisite to any merits decision

by a Federal Court." *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-

95 (1998). Having found that it lacked subject matter jurisdiction over this action,

the CIT could not, and indeed did not, reach the merits of the (untimely) action.

---

[32] *See* USCIT Admin. Order 02-1, *Electronic Filing Procedures and Submission of Confidential Information;* and USCIT Admin. Order 08-1, *EGovernment Act of 2002 and Privacy Redaction,* both available at https://www.cit.uscourts.gov/uscit-rules-forms-chambers-procedures-guidelines-and-administrative-orders.

[33] Although the Court's order sealing the "evidence summary", was entered two years ago, the government has made no effort to perform required redactions. Its filing remains sealed. No documents pertaining to that motion are on the record before this Court.

[34] None of the sealed documents are contained in the Joint Appendix in this appeal or referenced in the parties' briefs.

The Government argues at some length in its brief that Katana is liable for withheld duties simply because it was listed as importer of record on entry forms, Gov.'s Br. at 31-33, and notes that parties traditionally liable for payment of the importer of record's obligations may be liable for such duties.[35] *Id.* (citing *Blum v. United States*, 858 F.2d 1566 (Fed. Cir. 1988)). Of course, in *Blum,* it was undisputed that the named defendant—*i.e.,* Blum—had been the importer of record of the goods in question, and had violated 19 U.S.C. § 1592(a) by making false statements on entry documents which rendered his agent and surety liable in the event Blum did not pay the duties (this had been determined following administrative proceedings under 19 U.S.C. § 1592(b)). Unlike in the present case, *Blum* did not address a claim

---

[35] In *Blum*, the importer's surety was, by reason of the suretyship contract, "jointly and severally liable" with the bond principal for payment of duties.

of "identity theft"—a claim which CBP here acknowledged,[36] and which the CIT

found plausible.[37]

But fundamental to a claim to recover withheld duties under 19 U.S.C. § 1592(d) is CBP establishing that a violation of 19 U.S.C. § 1592(a) occurred and identifying the violator. This Court has held that persons who violate § 1592(a), or

---

[36] *See* Appx15: The [CBP Audit] report included notes on the cooperation of Katana and its manager, Mr. Joe Garcia, thanking [] for that cooperation and recognizing that the defendant "stated that it did not direct the importation of these goods." *See also Appx272.* ("[u]nbeknownst to [defendant], it appears that the [PRC] suppliers, working with Customs brokers in Los Angeles, made Katana the importer of record … " *et cetera*). *Id.*

CBP's auditor noted that these facts, combined with defendant's genuine lack of access to the relevant bills of lading or shipping contracts, had frustrated agency effort to make an adjustment to the calculation of the revenue loss such that it could reflect non-dutiable international transportation expenses that were included in the DDP prices stated in the operable invoices. According to defendant, the auditors based their calculation of dutiable values on the DDP invoices paid by it.

[37] CBP recently finalized a new regulation, 19 C.F.R. § 111.36(c), which requires a Customs broker to receive Powers of Attorney directly from the importer or drawback claimant, rather than from a freight forwarder. *See Modernization of the Customs Broker Regulations*, 87 Fed. Reg. 63267 (Oct. 18, 2022). In issuing the regulation, CBP noted:

> "The proposed regulation precludes a broker from obtaining a power of attorney from someone other than an importer or drawback claimant. The intent of this proposed provision is to clarify that a freight forwarder cannot serve as a barrier to communications between the broker and importer or drawback claimant, to address issues of **identity theft**, supply chain security, fee transparency, and to help ensure that an unlicensed person is not benefitting from the customs business conducted by the broker."

*Id.* at 63288 (emphasis added).

34

aid and abet a violation, are liable for restoration of withheld duties under § 1592(d), even if they were not the importer of record. *See e.g.*, *United States v. Trek Leather Inc.*, 767 F.3d 1288 (Fed. Cir. 2014), *cert. den. sub. nom, Shadadpuri v. United States*, 2015 U.S. LEXIS 3543 (2015) (corporate officer of importer of record held liable for knowingly "introducing" goods by means of false statements); *United States v. Inn Foods Inc.* 560 F.3d 1338, 1346 (Fed. Cir. 2009) (holding affiliate of defunct importer of record liable for withheld duties for having aided and abetted fraudulent importations); *see also United States v. Matthews*, 31 C.I.T. 2075 (2007), *reh. denied*, 32 C.I.T. 1087 (2008) (holding importer of record and others found to have violated 19 U.S.C. § 1592(a) "jointly and severally liable" for restoration of § 1592(d) duties).[38]

---

[38] *See also United States v. Ho*, 582 F. Supp. 3d 1325 (Ct Int'l Tr. 2022), where the CIT noted:

> Section 1592 of Title 19 of the U.S. Code prohibits the entry, introduction or attempted entry or introduction of merchandise into U.S. commerce by fraud, gross negligence or negligence through materially false information or material omission, as well as the aiding and abetting of such entry. 19 U.S.C. § 1592(a) (1)(A)-(B). As such, a person can be held liable for their own violation of 1592 or for aiding and abetting another's violation of 1592. *Id.*; *see Trek Leather, Inc.*, 767 F.3d at 1299 (holding that a defendant was liable "because he personally committed a violation of subparagraph (A)," not because of his position as a corporate officer) (citing *United States v. Matthews*, 31 CIT 2075, 2082-83, 533 F. Supp. 2d 1307, 1314, SLIP OP. 2007-188 (2007), *aff'd*, 329 F. App'x 282 (Fed. Cir. 2009); *United States v. Appendagez, Inc.*, 5 CIT 74, 79-80, 560 F. Supp. 50, 54-55 (1983)).

However, three predicate findings must be made before CBP may initiate a suit in the CIT to recover "withheld duties" under 19 U.S.C. § 1592(d): CBP must (i) actually find and assert a violation; (ii) identify a violator; and (iii) state the level of culpability involved in the violation. A statement of culpability is a necessary element of proving a § 1592(a) violation (non-culpable errors do not violate the statute).[39] CBP's June 20, 2019 Demand for Payment of Duty—the administrative determination which forms the basis for this action—does none of those things. It never

---

[39] Thus, 19 U.S.C. § 1592(a) provides (emphasis added):

(a) Prohibition
(1) General rule

Without regard to whether the United States is or may be deprived of all or a portion of any lawful duty, tax, or fee thereby, no person, **by fraud, gross negligence, or negligence**—

(A) may enter, introduce, or attempt to enter or introduce any merchandise into the commerce of the United States by means of—

(i) any document or electronically transmitted data or information, written or oral statement, or act which is material and false, or

(ii) any omission which is material, or

     (B) may aid or abet any other person to violate subparagraph (A).

(2) Exception

     Clerical errors or mistakes of fact are not violations of paragraph (1) unless they are part of a pattern of negligent conduct. The mere nonintentional repetition by an electronic system of an initial clerical error does not constitute a pattern of negligent conduct.

states, for example, that Katana committed a violation of § 1592(a). Directed to Katana's counsel, it says:

> Demand is made of your client, Katana Racing Inc., pursuant to Title 19, United States Code, Section 592(d) for payment of $5,742,483.80 representing duties deprived the United States due to violation of Title 19, United States Code, Section 592(a). The actions, which constitute the violation, are specified in Exhibit A enclosed.

The referenced Exhibit A states only that "[t]he subject 386 entries were submitted misclassified and undervalued, and also omitted safeguard duties on PVLTs from China as required by Presidential Proclamation 8414." It does not identify who submitted the entries—which, as the agency's own Audit Report indicated, was not Katana Racing Inc.[40] The referenced Exhibit A also notes that Katana had submitted a prior disclosure, and states (falsely) that "Katana admitted to $5,393.570.88 in duties and fees owed to CBP." As the CIT correctly noted "defendant has steadfastly and

---

[40] CBP's regulations anticipate that persons suspected of violating Section 592(a) of the Tariff Act, 19 U.S.C. §1592(a), will receive a pre-penalty notice identifying the elements of the violation,19 C.F.R. §162.77, § 162.78, and, in the event a violation of found, a notice of violation which must identify the violator. Thus, 19 C.F.R. §162.79(b) states (emphasis added):

**162.79. Determination as to violation**

\*            \*            \*

(b)    Violation—(1) Written notice of claim. If, after considering any presentations made in response to the prepenalty notice, the Fines, Penalties, and Forfeitures Officer determines that there was a violation **by the person named in the prepenalty notice**, he promptly shall issue a written notice of a claim for a monetary penalty **to that person.**

repeatedly informed CBP that it did not authorize the use of its name as the IOR on the entry forms." Appx43.

Finding the June 20, 2019, notice legally insufficient, the CIT correctly concluded, "[w]hat is missing from the written demand, however, is a clear statement of how that subsection (a) definition is attributable *to the defendant*." Appx34 (emphasis added). The entries in this case were long ago liquidated and made final pursuant to 19 U.S.C. § 1514. "Withheld duties" can be collected from a person under 19 U.S.C. § 1592(d) *only if* that person violated the proscription in § 1592(a). At no point in its Demand for Payment of Duty did CBP ever state that Katana violated § 1592(a).[41]

Similarly, at no point in the Complaint in this action did the Government ever state that Katana violated 19 U.S.C. § 1592(a). The Complaint recites that Katana

---

[41] The Government's position in this litigation and appeal appears to suggest that the named importer of record has vicarious liability for payment of withheld duties under 19 U.S.C. § 1592(d) even if it did not commit a violation of § 1592(a). However, no statutory or case law support exists for this proposition, which would violate the principle of finality of liquidation, as well as basic precepts of fairness and equity.

By way of comparison, the Internal Revenue Service has for years included rigorous screening in its electronic systems to identify possible identity theft related to returns filed with the agency, *see* https://www.irs.gov/newsroom/when-to-file-a-form-14039-identity-theft-affidavit (last accessed October 10, 2022), and operates an Identity Theft Victim Assistance Center, *see* https://www.irs.gov/individuals/how-irs-id-theft-victim-assistance-works (last accessed October 10, 2022). CBP, for its part, appears disinclined to investigate possible identity theft even when its auditors supply it with plausible evidence of the theft, but choose instead to hold the victim liable, on a theory of strict or vicarious liability.

was identified as importer of record of 386 entries of goods, Appx89 at ¶ 3, asserts

unspecified errors in those entries, Appx91 at ¶11, alleges that one entry of goods

was undervalued in a way that deprived CBP of approximately $28,000 in duties,

*id.*, ¶ 12, and makes a conclusory statement that "As a result of this undervaluation

scheme, Katana, *as importer of record*, caused the amount of safeguard duties, reg-

ular customs duties, Harbor Maintenance Fees, and Merchandise Processing Fees to

be undercalculated by $5,742,483.80," *id.* at ¶13. The Government's claim of liabil-

ity does not rest on any claim that Katana violated 19 U.S.C. § 1592(a), merely that

Katana is listed as named importer of record on the entry documents.

Nor, as the CIT noted, did the Government at any time allege a level of cul-

pability for the actions which, under the statute, is necessary to establish a violation

of 19 U.S.C. § 1592(a). An essential part of any administrative process, this Court

has noted the determination of culpability is to be made by CBP in administrative

proceedings, not before the courts.[42] *See United States v. Nitek Electronics Inc.*, 806

F.3d 1376, 1380-81 (Fed Cir. 2015) ("[T]he legislative history nowhere suggests

that the Department of Justice should determine the level of culpability. It leaves this

determination in the hands of Customs."). Absent an allegation of culpability, the

---

[42] Even were the CIT inclined to allow the Government to amend its pleadings, the inability to correct a fundamental defect in the June 20, 2019 duty demand would still render this action time-barred.

39

Complaint does not plead a 19 U.S.C. § 1592(a) violation and thus, no basis for the

recovery of withheld duties—*from anyone*—under § 1592(d).[43]

It follows that the Complaint in this action did not meet the plausibility stand-

ard set out in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic v. Twombly*,

550 U.S. 544 (2007). In *Bell Atlantic*, the Supreme Court said that a pleading, to be

---

[43] Moreover, in actions to collect penalties under 19 U.S.C. § 1592, the statute ties the Government's burden of proof to the level of culpability involved in the violation, stating at 19 U.S.C. § 1592(e):

> Notwithstanding any other provision of law, in any proceeding commenced by the United States in the Court of International Trade for the recovery of any monetary penalty claimed under this section—
>
> (1) all issues, including the amount of the penalty, shall be tried de novo;
> (2) if the monetary penalty is based on fraud, the United States shall have the burden of proof **to establish the alleged violation** by clear and convincing evidence;
> (3) if the monetary penalty is based on gross negligence, the United States shall have the burden of proof **to establish all the elements of the alleged violation**; and
> (4) if the monetary penalty is based on negligence, the United States shall have the burden of proof to **establish the act or omission constituting the violation**, and the alleged violator shall have the burden of proof that the act or omission did not occur as a result of negligence.

Thus, the level of culpability is tied to the burden of proof to **establish the alleged violation**, not to determine the quantum of penalty which the Court does independently, applying the factors set out in *United States v. Complex Machine Works, Inc.*, 83 F. Supp. 2d 1037, 1313-1314 (Ct. Int'l Tr. 1999).

Plaintiff has shown no reason why the same burdens of proof should not apply in an action seeking restoration of "withheld duties" under §1592(d). Its failure to allege a level of culpability leaves the Trade Court in a quandary should this case proceed.

sufficient, must recite more than the possibility of a cause of action, but allege facts plausibly so stating:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level. The pleading must contain something more than a statement of facts that merely creates a suspicion of a legally cognizable right of action, on the assumption that all the allegations in the complaint are true (even if doubtful in fact.)

550 U.S. at 555. In short, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Id* at 570.

In *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), the Supreme Court indicated that, to be sufficient, a complaint must plausibly plead misdeeds by particular defendants. In that case, the former Attorney General and the FBI Director sought to have themselves dismissed from a lawsuit charging improper treatment of post-9/11 detainees. The Supreme Court upheld their dismissal from the case, noting:

> Unlike in *Twombly*, where the doctrine of *respondeat superior* could bind the corporate defendant, here, as we have noted, petitioners cannot be held liable *unless they themselves acted* on account of a constitutionally protected characteristic. Yet respondent's complaint does not contain any factual allegation sufficient to plausibly suggest petitioners' discriminatory state of mind. His pleadings thus do not meet the standard necessary to comply with Rule 8.

556 U.S. at 683 (emphasis added).

In the instant case, the June 20, 2019 Notice of Duty Demand does not meet regulatory requirements to identify a person who committed a predicate violation of § 1592(a), nor associate a level of culpability with such violation. The Government's CIT Complaint does not allege that Katana committed any violation of § 1592(a)— nor identify anyone else who did—but merely notes that Katana was named importer of record on the entries in question.

Whether these omissions are viewed as a failure to exhaust administrative remedies, Appx35, or as an insufficiency in the complaint, Appx38 ("the plaintiff does not deserve judgment on this complaint"), the CIT correctly concluded that the Government had not pleaded the minimum elements necessary for its case to go forward, and deemed it necessary to say so.

However, it is incorrect to state, as the Government does, that Katana's status as a named importer of record establishes its liability for payment of withheld duties under 19 U.S.C. § 1592(d). Gov.'s Br. at 31-33. The importer of record is protected from further assessments by the statutory finality of liquidation set out at 19 U.S.C. § 1514(a), and the Government bears the burden of proving a § 1592(a) violation (including asserting the alleged level of culpability) which would allow that "finality

of liquidation" to be set aside, and a claim for withheld duties to be pursued. Nor did

the CIT render judgment on Katana's "identity theft" defense. Gov.'s Br. at 33-35.[44]

While the CIT offered a fulsome commentary on the inherent shabbiness of

CBP's "investigation" and the lack of merit in the Government's pleadings and Mo-

tion for Summary Judgment, its Judgment of Dismissal was not based on either of

those things, but rather, it was justified under USCIT R. 12(b)(1) on the ground that

the Government's Complaint was untimely filed.

## **CONCLUSION**

Defendant-Appellee Katana requests that this Court sustain the opinion and

judgment of the CIT.

---

[44] It is also noteworthy that this is not an action to collect an amount which CBP had the power to assess administratively. Rather, the burden of proving a violation rests with Customs, and the defendant is not liable for anything until the Court enters judgment to that effect. *See United States v. National Semiconductor Corp.,* 496 F.3d 1354 (2007*)*. Further, as noted by this Court in *Nitek, supra,* it is not intended that, in actions to recover penalties or duties imposed under Section 592, the parties write on a blank slate. Section 592 anticipates that, prior to filing suit in this Court— whether for penalties or duties—there be administrative proceedings to identify a violation, a violator and a level of culpability.

Respectfully submitted.

  /s/ John M. Peterson
John M. Peterson
  *Counsel of Record*
Richard F. O'Neill
Patrick B. Klein
NEVILLE PETERSON LLP
55 Broadway Suite 2602
New York, NY 10006
jpeterson@npwny.com
(212) 635-2730

October 24, 2022

## **CERTIFICATE OF COMPLIANCE WITH**
## **TYPE-VOLUME LIMITATIONS**

I hereby certify that the foregoing Response Brief of Defendant-Appellee, Katana

Racing Inc., complies with the relevant type-volume limitation of the Federal Rules

of Appellate Procedure and Federal Circuit Rules. It was prepared using a propor-

tionally-spaced typeface and includes 11,155 words.


   /s/ Richard F. O'Neill
      Richard F. O'Neill

October 24, 2022

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 24th day of October, 2022, I electronically filed the fore-

going Response Brief of Katana Racing Inc., with the Clerk of the Court for the

United States Court of Appeals for the Federal Circuit through the Court's CM/ECF

system. Participants in this case who are registered CM/ECF users will be served by

the appellate CM/ECF system.


         /s/ Patrick B. Klein
          Patrick B. Klein

October 24, 2022